UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-112-TBR

TRUSTEES OF THE PLUMBERS AND
STEAMFITTERS LOCAL 184 SUPPLEMENTAL
PENSION PLAN, PLUMBERS AND STEAMFITTERS
LOCAL 184, AND PLUMBERS AND PIPEFITTERS
NATIONAL PENSION FUND                                                    Plaintiffs,

v.

IVITTS PLUMBING CONTRACTORS, INC.                                        Defendant.


**MEMORANDUM OPINION**

This action comes before the Court upon competing motions for summary judgment brought by Defendant, Ivitts Plumbing Contractors, Inc., ("Ivitts" or "the Company"), and Plaintiffs, the Trustees of the Plumbers and Steamfitters Local 184 Supplemental Pension Plan ("the Local Plan"); the Plumbers and Steamfitters Local 184 ("the Union"); and the Plumbers and Pipefitters National Pension Fund ("the National Pension Fund") (collectively, "Plaintiffs"). First, Ivitts submitted a Motion for Partial Summary Judgment concerning the National Pension Fund's claims, (Docket No. 20), to which Plaintiffs responded, (Docket No. 26). Plaintiffs then filed their own Motion for Summary Judgment, (Docket No. 23). Ivitts responded, (Docket No. 27), and Plaintiffs replied, (Docket No. 30). Also pending are Plaintiffs' Motion to Strike Portions of the Affidavits of Keith Anderson and Jimmy Ivitts, (Docket No. 25), and Ivitts' Motion for Leave to File Response to Motion to Strike, (Docket No. 32). Plaintiffs have filed an Objection to Ivitts' Motion for Leave. (Docket No. 34.)

These matters are now ripe for adjudication. For the reasons explained below, the Court will GRANT Ivitts' Motion for Partial Summary Judgment, (Docket No. 20), and DENY Plaintiffs' Motion

1

for Summary Judgment, (Docket No. 23). Furthermore, the Court will DENY both Plaintiff's Motion to Strike, (Docket No. 25), and Ivitts' Motion for Leave, (Docket No. 34).

**Background**

On August 3, 2012, Plaintiffs instituted this action seeking declaratory relief and damages for breach of a collective bargaining agreement. Plaintiffs, which provide retirement benefits for employees of contributing employers, bring their claims pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132.

Plaintiffs allege that Ivitts breached the parties' collective bargaining agreement ("the Bargaining Agreement") by failing to make the required deductions and payments. The Bargaining Agreement requires Ivitts to make contributions to the National and Local Pension Plans on behalf of certain employees.[1] The conflict centers upon whether Keith Anderson, a former Ivitts employee, was a covered

---

[1] Specifically, the Bargaining Agreement states:

> **Section 5: Fringe Benefit Funds**
>
> (a) All employers of members of Local Union 184, commencing July 1, 2010, shall contribute and pay the sum of five dollars eighty-five ($5.85) per hour worked whether at regular rate or overtime rate for each employee covered by this Agreement, to the Indiana Pipe Trades Health and Welfare Trust Fund.
>
> . . . .
>
> (b) The employer agrees to contribute to the Plumbers and Steamfitters National Pension Fund effective July 1, 2010 three dollars and twenty-five cents ($3.25) per hour; effective January 1, 2011 three dollars and seventy-four cents ($3.74) per hour; and effective January 1, 2012 three dollars and ninety-three cents ($3.93) per hour for each hour an employee receives pay in accordance with the Standard Form of Participation Agreement attached to and made a part of this Agreement.
>
> (c) The contributions, coverage and administration of the above-mentioned Funds shall be in accordance with the respective Trust Agreement between the parties heretofore establishing said Funds together with such amendments as the Trustees of these Funds may thereafter adopt.

employee pursuant to the terms of the Bargaining Agreement. If the Bargaining Agreement rendered Anderson a covered employee, the contract obligates Ivitts to make pension contributions on his behalf. (*See* Docket No. 20-5.) If, instead, the Bargaining Agreement does not cover Anderson's position, no such obligation exists.

The parties set forth the facts as follows. Anderson, a certified plumber and a longtime Union member, suffered a debilitating cancer diagnosis in 2005 that left him unable to perform plumbing work. The following summer, Ivitts hired Anderson as an estimator. In this role, Anderson chiefly prepared estimates for various plumbing jobs on construction projects; he also performed miscellaneous office tasks as needed. Neither Plaintiffs nor Ivitts disputes that in his office-based position, Anderson performed none of the plumbing and related work described by the Bargaining Agreement.

Anderson's tenure as an estimator lasted from August 2006 to December 2011. Throughout this period, Anderson continued to pay Union dues in order to preserve his healthcare coverage. However, because Ivitts did not consider Anderson a covered employee according to the Bargaining Agreement, Anderson paid none of the Union assessments and contributions associated with Anderson's employment.

His medical condition worsening, Anderson contacted the Union's treasurer and financial agent, Derrick Sanderson, in Summer 2011 to determine the eligibility requirements for a disability pension under the National Pension Fund's plan. Anderson explained to Sanderson that he intended to resign his position as an estimator in light of his deteriorating health. Sanderson counseled Anderson that he must satisfy two requirements to qualify for a disability pension. First, he would be required to work an

---

. . . .

    (h)    The employer agrees to contribute to the Plumbers & Steamfitters Local 184 Supplemental Pension Plan effective:
July 1, 2010 $3.40 /hour based on per hours paid.
July 1, 2011 $3.50 /hour based on per hours paid.

(Bargaining Agreement (Effective July 1, 2010 to June 30, 2012), Article VI, Section 5, Subsections (a)-(c), (h) (Docket No. 23-3 at 22-23, 25).)

additional 500 hours in his current position, and second, he needed to make pension contributions to the National Pension Fund on the hours that he worked.

Anderson relayed Sanderson's advice to Ivitts and requested the Company to make the required pension contributions to the National Pension Fund. Ivitts agreed, paying the qualifying pension contributions from June 2011 through October 2011, the final months of Anderson's employment. According to Ivitts, the National Pension Fund accepted the contributions without objection despite the fact that Ivitts had paid no other assessments and contributions on Anderson's employment. Eventually, the National Pension Fund issued a disability pension to Anderson. The National Pension Fund continues to pay all of the associated disability benefits.

**Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys.*

*Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

**Analysis**

I.  **Plaintiffs' Motion to Strike**

The Court will first address Plaintiffs' Motion to Strike portions of certain affidavits filed by Ivitts. In their Motion to Strike, Plaintiffs summarily argue that certain statements in the depositions of Keith Anderson and Jimmy Ivitts "constitute either hearsay and/or opinions" and are consequently inadmissible. (Docket No. 25 at 3.)

Although Plaintiffs point to neither the federal rules nor relevant precedent, Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike. Such motions are generally disfavored. *Fed. Sav. & Loan Ins. Corp. v. Burdette*, 718 F. Supp. 649, 662 (E.D. Tenn. 1989). Rule 12(f) empowers the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Rules of Civil Procedure define a "pleading" as follows:

> [A] complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original third party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.

Fed. R. Civ. P. 7(a). An affidavit is not a pleading that is subject to a motion to strike under Rule 12(f). See *Fox v. Mich. State Police Dep't*, No. 04-2078, 2006 WL 456008, at *2 (6th Cir. Feb. 24, 2006); *Adams v. Shelby Cnty., Tenn.*, No. 03-2975 B, 2006 WL 522422, at *1 (W.D. Tenn. Mar. 30, 2006); *City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F. Supp. 2d 219, 221-22 (W.D. Mich. 2000).

Moreover, motions to strike are generally disfavored. Rather than striking material, a court may simply ignore inadmissible evidence. *See, e.g.*, *Berry v. Frank's Auto Body Carstar, Inc.*, 817 F. Supp. 2d 1037, 1041-42 (S.D. Ohio 2011) (footnote omitted) ("[M]otions to strike are disfavored; a Court should ignore inadmissible evidence instead of striking it from the record.").

The Court finds this approach the most prudent one. Accordingly, Plaintiffs' Motion to Strike is DENIED. The Court will consider the parties' arguments regarding the admissibility of the challenged portions of the depositions at issue in its ruling on the motions for summary judgment. Each will be afforded the appropriate weight, if any.

## II. Motions for Summary Judgment

Section 301 of the Labor Management Relations Act confers jurisdiction of suits alleging the breach of a collective bargaining agreement to federal courts. 29 U.S.C. § 185(a). The same section authorizes federal courts to craft the federal law that governs such conflicts. *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957) ("[T]he substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws.") (citation omitted). Federal courts have thus created a body of federal common law that dictates the interpretation of collective bargaining agreements. *Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 224-25 (1983) ("In defining the relationships created by [collective bargaining agreements], the Court has applied an evolving federal common law grounded in national labor policy."). Here, the parties' dispute centers upon the Bargaining Agreement. The Court will therefore construe the contract to determine whether Ivitts was required to make contributions to the funds on Anderson's behalf.

"Unless ambiguous, a collective bargaining agreement is limited to the language contained in its four corners." *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enters., Inc.*, 163 F.3d 965, 969 (6th Cir. 1998) (citation omitted); *see also Bakery & Confectionary Union & Indus. Intl. Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021-22 (4th Cir. 1997) ("Section 515 strengthens the position of multiemployer plans by holding employers and unions to the literal terms of their written commitments. . . . [A]n employer's obligation to a multiemployer fund is determined by the plain meaning of the language used in the collective bargaining agreement.") (citations omitted)).

Here, the Bargaining Agreement's clear, unambiguous terms define which activities entitle an employee to coverage. The contract repeatedly notes the limited nature of its coverage. First, Article IV restricts the contact's applicability to the work described therein:

> Contractors recognize the Union as the sole and exclusive bargaining representative for all journeymen and apprentices in their employ with respect to wages, hours, and other terms and conditions of employment *of any and all work described in this Agreement*.

(Docket No. 20-4 at 2 (emphasis added).) More pointed is Article X, describing the work of covered employees:

> This Agreement shall apply to and cover all employees of an Employer employed to perform or performing plumbing, heating and piping work as listed hereinafter within the geographical jurisdiction allocated to the Local Union by the United Association. [Article X then lists fifty types of heating, plumbing, and piping work related to the physical installation of various components and facilities.]

(Docket No. 20-4 at 21-23.)

Under the Bargaining Agreement's unambiguous terms, Anderson performed none of the work activities required to initiate coverage. Each activity listed in Section X involves the physical installation of plumbing facilities at a construction project site. Anderson's duties as an estimator, by contrast, shared no such characteristics. Instead, Anderson's work was completed prior to the commencement of the construction process, and his responsibilities were performed solely in the Ivitts office rather than at project sites. Indeed, Anderson's debilitating health left him unable to exert himself in the manner demanded by Section X's tasks.

Employers must only make pension contributions on behalf of employees who are covered by a collective bargaining agreement. "[T]he collective bargaining and contribution agreements establish the employer's obligation to the pension fund . . . ." *Cent. States, S.E. and S.W. Areas Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994); *see also Ind. State Council of Roofers Health & Welfare Fund v. Adams Roofing Co. of Kokomo, Inc.*, 753 F.2d 561, 564 (7th Cir. 1985) (holding that

7

because worker's wages were not established in the relevant collective bargaining agreement, no ERISA violation occurred). Because the Bargaining Agreement did not cover Anderson's work as an estimator, no basis exists to compel the Company to make contributions in his behalf. Therefore, because Anderson was not a covered employee according to the Bargaining Agreement, the National Pension Fund's claim against Ivitts must fail.

In Plaintiffs' telling, Ivitts and Anderson conspired to escape their obligations to both the National and Local Pension Funds. They present a threefold argument in response to Ivitts' Motion. First, they contend that other estimators who have been members of the Local 184 are covered under the Bargaining Agreement. Next, they ground this contention in the Affidavit of Kyle Henderson, the Business Manager of the Local 184 and Chairman of the Local Plan. Henderson states that the Bargaining Agreement covers estimators, particularly those who have been members of the Local 184. Henderson further explains that plumbers have performed estimator work while continuing as members of the Local 184. (Docket No. 26-1 at 2.) Finally, Plaintiffs point to Bobby Ivitts, a Union member who worked as both a plumber and an estimator for the Company. They explain that Anderson was a member of the Local 184, and that Ivitts paid contributions on behalf of both Anderson and Ivitts. (Docket No. 26-1 at 2.)

The Court is unconvinced by these arguments. The Court first notes that an employee's coverage hinges upon the nature of his work rather than his union status. *Fantin Enters., Inc.*, 163 F.3d at 970 (6th Cir. 1998). More broadly, the Company's treatment of other employees—or even of Anderson himself—has little relevance to the Court's interpretation of the unambiguous contract language at issue. "[P]ast practice or custom should not be used to interpret or give meaning to a provision or clause of [a] collective bargaining agreement that is clear and unambiguous." *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 601 (6th Cir. 1997). As discussed *supra*, the Bargaining Agreement answers the coverage issue clearly, reflecting the parties' unequivocal intent. The Court need

not look further and will not disturb the parties' conclusive agreement. *See Fantin Enters., Inc.*, 163 F.3d at 969.

Ivitts apparently made occasional voluntary pension contributions in Anderson's behalf, as reflected on the Company's Fringe Benefit Report. (*See* Docket No. 23-6.) Plaintiffs contend that such contributions reveal that Anderson was a covered employee. At first blush, and in its most general terms, Plaintiffs' argument accords with Sixth Circuit precedent: "[A] collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound . . . [a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Central States Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989) (quoting *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985)).

However, § 302(c)(5)(B) of the National Labor Relations Act, 29 U.S.C. § 186(c)(5)(B), requires a "written agreement" to underlie an employer's obligation to pay benefits into an employee trust fund. *Merrimen v. Paul F. Rost Elec., Inc.*, 861 F.2d 135, 138 (6th Cir. 1988). Section 302(a) of the National Labor Relations Act, 29 U.S.C. § 186(a), limits the circumstances under which an employer may contribute monies to employee groups. This general prohibition on contributions, however,

> shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents . . . *Provided*, That . . . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer . . . .

29 U.S.C. 186(c). Courts have "required strict compliance" with § 302(c)'s "written agreement" requirement. *Cent. States v. Kraftco, Inc.*, 799 F.2d 1098, 1111 n.16 (6th Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987). Section 302 renders contributions to employee groups made in violation of § 302—as for an uncovered employee—illegal. *See Bricklayers Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975). Here, no written agreement authorizes contributions to be made in Anderson's behalf.

Any errant payments, therefore, failed to comply with the National Labor Relations Act and cannot establish an obligation of coverage.

## CONCLUSION

In light of the foregoing discussion, the Court will GRANT Ivitts' Motion for Partial Summary Judgment, (Docket No. 20), and DENY Plaintiffs' Motion for Summary Judgment, (Docket No. 23). The Court will DENY both Plaintiff's Motion to Strike, (Docket No. 25), and Ivitts' Motion for Leave, (Docket No. 34). A separate Order will issue on this date in accordance with the Court's Memorandum Opinion.